IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

United States of America        )
                                )
                                )
        v.                      )        No. 25 CR 270
                                )
                                )
Marques Bryant                  )


<u>Memorandum Opinion and Order</u>

Five bank robberies took place in the winter and spring of 2022: four in and around Houston, Texas, and one in Arlington Heights, Illinois. The U.S. Attorney's Office for the Southern District of Texas charged Marques Bryant ("Mr. Bryant") with all four Texas robberies, *United States v. Bryant*, No. 4:22-CR-0256 (S.D. Tex. 2024), and he eventually pled guilty to two of them. *Id.* at ECF 56 (Sentencing Transcript, July 23, 2024). Mr. Bryant is charged here with the Illinois robbery.

Before me are several motions *in limine.* In the first, the government seeks to admit evidence of Mr. Bryant's involvement in three of the Texas robberies in order to prove his identity by way of *modus operandi* under F.R.E. 404(b). In the second, Mr. Bryant seeks to exclude testimony from a handwriting expert which the government would use to bolster its Rule 404(b) argument. In the third (Mr. Bryant's "Consolidated Motions *in Limine*," ECF 32), Mr.

1

Bryant moves, *inter alia*, to preclude the admission of any undisclosed 404(b) evidence. In the fourth (the government's "Consolidated Motions *in Limine*," ECF 36), the government moves, *inter alia*, to admit certified business records and certified public records relating to the Texas robberies. I do not address the remainder of the two consolidated motions *in limine* here.

For the reasons below, I deny the government's motions and grant Mr. Bryant's.

## I.

With narrow exceptions not applicable here, the Federal Rules of Evidence flatly prohibit the introduction of evidence of "a person's character or character trait...to prove that on a particular occasion the person acted in accordance with the character or trait." F.R.E. 404(a)(1). But Rule 404(b)(2) clarifies that evidence of a person's past "crime[s], wrong[s], or [bad] act[s]" may be admissible to prove some fact *other* than that person's character, including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The list in Rule 404(b)(2) is non-exhaustive, and the rule permits the use of prior bad acts for any purpose which does not rely on an inference about a person's character. *See United States v. Johnson*, 584 F.3d 731, 736 (7th Cir. 2009).

Where objected to, the proponent of Rule 404(b) evidence must show that the offered prior act evidence is relevant "through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case." *United States v. Brewer*, 915 F.3d 408, 415 (7th Cir. 2019) (citations omitted).

I then determine whether the offered bad acts are admissible under Rule 403, which calls for the exclusion of otherwise-relevant evidence "if its probative value is substantially outweighed by a danger of...unfair prejudice, confusing the issues, misleading the jury...[or] wasting time." F.R.E. 403; *Brewer*, 915 F.3d at 415. Prior act evidence "raises special concerns about unfair prejudice because it almost always carries some risk that the jury will draw the forbidden propensity inference." *United States v. Gomez*, 763 F.3d 845, 856–57 (7th Cir. 2014).

One way to prove identity under Rule 404(b) is through *modus operandi*, linking the known perpetrator of a past crime with the unidentified perpetrator of the instant one by way of a signature methodology employed in both. *Id.* at 854. Here, for example, the government offers evidence that Mr. Bryant committed three Texas bank robberies to show that he was the unidentified perpetrator of a similar Illinois bank robbery. In some jurisdictions, the

criminal methodology offered to prove identity needs to be practically unique; the Seventh Circuit requires only that it be a "'distinctive'—not identical—'method of operation.'" *Brewer*, 915 F.3d at 415–16 (citing *United States v. Carson*, 870 F.3d 584, 599 (7th Cir. 2017)); *New Wigmore: A Treatise on Evidence* § 13.6 (2025) (surveying tests of distinctiveness).

I must decide any "preliminary question about whether...evidence is admissible." F.R.E. 104(a). Courts generally decide preliminary questions by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987) (collecting cases). In questions of conditional relevance, "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." F.R.E. 104(b). In *Huddleston v. United States*, the Supreme Court considered whether the confluence of these two rules required the district court in the Rule 404(b) context to find by a preponderance that the defendant had in fact committed the prior acts before admitting evidence about them. 485 U.S. 681, 686–88 (1988). The Court found that no such preliminary finding is necessary under Rule 104(a). *Huddleston*, 485 U.S. at 689. Rather, under Rule 104(b), the district court "simply examines all the evidence in the case and decides whether the jury could reasonably

4

find the conditional fact" by a preponderance of the evidence. *Id.* at 690.

The *Huddleston* Court suggested that doubt that the prior acts took place at all should factor into the district court's evaluation of whether the probative value of the prior acts is substantially outweighed by prejudice or the other considerations under Rule 403. *Id.* at 689 n. 6, 691. Where it is doubtful that the prior acts took place (or that the defendant committed them), they are less probative, and "Rule 403 does much of the heavy lifting in the admissibility analysis by excluding other-act evidence which may be slightly probative through a non-propensity theory but has a high likelihood of creating unfair prejudice by leading a jury to draw conclusions based on propensity." *Gomez*, 763 F.3d at 857.

## II.

The government contends that Mr. Bryant committed "four robberies in Houston." ECF 24 at 1. It argues that the *modus operandi* that Mr. Bryant used in three of those robberies, and that someone used in committing the Illinois robbery, was distinctive enough that the perpetrators have to be one and the same.

It will be salutary at the outset to get all of these robberies straight. There were four in Texas: at an IBC branch on

5

January 28, 2022; at a Wells Fargo branch on February 2, 2022; at a Comerica branch on March 7, 2022; and at a PNC branch on March 8, 2022. ECF 24 at 3. And there was one in Illinois, at a Chase branch on March 15, 2022. *Id.* at 2. In all five robberies, the perpetrator was a black man wearing a black puffy coat, a face mask, and a White Sox baseball cap. *Id.* at 2; ECF 28 at 1. The robber handed the teller a demand note at the counter in all five crimes. ECF 24 at 3–4. The robber only left a note behind on January 28, March 7, and March 15. *Id.* The U.S. Attorney for the Southern District of Texas charged Mr. Bryant with all four Texas crimes, but Mr. Bryant pled guilty only to the January 28 and March 8 robberies. *Id.* at 4. In a strange omission, the government neglected to mention that a man named Patrick Roberts ("Mr. Roberts") was also charged with the first two robberies and pled guilty to committing the latter in Texas state court. ECF 28 at 1–2. The crimes thus break down like this:

| | Location | Convicted | Note Left Behind | Same Outfit |
|---|---|---|---|---|
| **Jan. 28** | Texas | Bryant | Yes | Yes |
| **Feb. 2** | Texas | Roberts | No | Yes |
| **Mar. 7** | Texas | No-One | Yes | Yes |
| **Mar. 8** | Texas | Bryant | No | Yes |
| **Mar. 15** | Illinois | No-One | Yes | Yes |

## A. Identity

The government wishes to tell the jury that Mr. Bryant committed the January 28, March 7, and March 8 robberies. To do that, under *Huddleston* and Rule 104(b), the government must provide evidence such that a jury could find, by a preponderance, that Mr. Bryant committed those robberies. 485 U.S. at 689–690. Mr. Bryant pled guilty to the January 28 and March 8 robberies, and I accept that the jury could reasonably find that he was the perpetrator of those acts. The government runs into more trouble when it comes to March 7.

There, the government offers me three arguments. First, the government simply states that Mr. Bryant "committed [all] four robberies in Houston." ECF 24 at 1. As Mr. Bryant points out, it seems difficult to square that assertion with Mr. Roberts's plea to the February 2 robbery. ECF 28 at 1–2.

Second, the government argues that the Presentence Investigation Report ("PSR") at Mr. Bryant's sentencing for the January 28 and March 8 robberies included "all four Houston Robberies [*sic*]," and that Mr. Bryant failed to object to their

7

inclusion in the PSR. ECF 24 at 4. I see a couple of problems with this line of argument. One, the failure to object to a PSR can bind the defendant to the facts in the PSR for sentencing purposes, *see United States v. Sumner*, 265 F.3d 532, 537–39 (7th Cir. 2001), but the government has pointed me to no authority holding that the failure to object would then establish substantive facts against the defendant in another criminal case.[1] Two, the PSR apparently also held out that Mr. Bryant was responsible for the February 2 robbery, but another man, Mr. Roberts, pled specifically to being the robber in that crime, so I clearly cannot take all of the facts from the PSR, objections or no. ECF 28-2 at 2.[2]

---

[1] Indeed, the government seems to understand that this argument is not particularly strong. I note that the Assistant U.S. Attorney at Mr. Bryant's Texas sentencing told the district court that Mr. Bryant had committed the March 15 *Illinois* robbery, but the government does not attempt to offer Mr. Bryant's non-objection to that assertion as proof positive that he committed the robbery in the instant case. *United States v. Bryant*, No. 4:22 CR 256, ECF 56 (Sentencing Transcript) at 5 (S.D. Tex. July 23, 2023).

I also note that while Mr. Bryant's attorney in that case submitted a statement of no objections to the PSR, no-one colloquied Mr. Bryant on the record about the report. *Id.* at 3–4.

Finally, I take notice that the facts section of Mr. Bryant's plea agreement in the Texas case, which Mr. Bryant signed, encompassed only the January 28 and March 8 robberies and not the other two. *Id.*, ECF 39 (Plea Agreement Aug. 28, 2023) at 9–10, 14.

[2] The government contends in this part of its motion that "Defendant also had the same M.O....for the February 2 Wells Fargo robbery,

8

Third, the government writes that if Mr. Bryant denies that he committed the March 7 robbery, the government will offer evidence that the March 7 robbery was committed with the same *modus operandi* as the January 28 and March 8 robberies.[3] *Id.* at 5 n.1. That is, the government will use an intermediate *modus operandi* argument to show the jury that Mr. Bryant committed the March 7 robbery so that it can use the March 7 robbery in a *modus operandi* argument as to the March 15 Illinois robbery.

In service of this third argument, the government offers FBI handwriting examiner Katelyn Bruno ("Ms. Bruno"), who will testify that the notes left behind at the January 28, March 7, and March 15 robberies were all written by the same hand. ECF 24 at 7. The government strengthens Ms. Bruno's conclusion by noting that the three recovered notes share two stylistic quirks: they all end with the phrase "Will shoot," and they all ask the teller to put

---

but...the government does not at this time intend to introduce any evidence from that robbery in this case." ECF 24 at 5 n.1. I do not see how that claim can be squared with Mr. Roberts's plea to the Wells Fargo robbery.

[3] The government also contends that Mr. Bryant "left his fingerprints on the note used to commit the March 7 robbery." ECF 24 at 5 n.1. I do not know what to make of this assertion, other than that to try to prove it, the government would need to call yet another expert.

the money in "a envelope" rather than in "an envelope."[4] *Id.* The overall logic is that, because Mr. Bryant pled guilty to the January 28 robbery, and because the note in that robbery matches the writing on the March 7 note, then Mr. Bryant was the March 7 robber, and thus he is more likely to have been the March 15 robber, who used a note with similar handwriting. Mr. Bryant points out that at no point did he admit to *writing* the January 28 note that the government recovered; because that note might have been written by someone else (and because he, again, did not plead to the note or the robbery on March 7), at *most* the similar handwriting proves that *somebody* was involved in all three crimes. ECF 28 at 10.

The ways that the government intends to pin the March 7 robbery on Mr. Bryant each entail some degree of 'mini-trial,' and the number of questions at issue in each increases as the list goes on. Mr. Bryant has requested that, if I allow in the 404(b) evidence, he be allowed to introduce his own prior acts evidence as to Mr. Roberts and to argue that Mr. Roberts committed the March 7 and 15 robberies (and, of course, to argue that Mr. Roberts and not Mr. Bryant wrote the notes in all of the robberies). I cannot

---

[4] The note at the March 8 robbery that Mr. Bryant pled to shared neither of these quirks. *United States v. Bryant*, No. 4:22 CR 256, ECF 39 (Plea Agreement) at 9 (S.D. Tex. Aug. 28, 2023).

see, in the light of Mr. Roberts's plea to the February 2 robbery, how I could in fairness deny Mr. Bryant's request. And this trial would rapidly devolve into one not about a March 15 Illinois robbery but a March 7 Texas one, a trial whose evidence is all in Texas and half of which would consist of documents from Texas state and federal guilty pleas.

This is all to say that before I even address the distinctiveness of the *modus operandi* here, there is a danger of unfair prejudice under Rule 403 (because the evidence linking Mr. Bryant to the March 7 robbery is tenuous and hotly contested) and a *very* serious danger of "confusing the issues, misleading the jury, undue delay, [and] wasting time." *Gomez*, 763 F.3d at 857 n.4.

### B. Distinctiveness

The government argues that three aspects of the methodology in the Texas and Illinois robberies together constitute a signature *modus operandi*. First, in each of the robberies, the culprit wore a similar outfit: a black, hooded puffy jacket, a black White Sox hat, and a face mask (I note, viewing the government's photographs, that the face masks, shoes, and pants worn in the robberies varied). ECF 24 at 8–10. Second, the robber used a demand note. *Id.* at 8. And third, the robberies were all committed within 45 days of each other. ECF 24 at 8.

11

Mr. Bryant rejoins that the first two aspects are "generic." ECF 28 at 6. People generally wear coats in the winter; many people wore masks while the COVID-19 pandemic was raging; and anybody can wear a White Sox cap. *Id.* at 6–7. To the extent that that outfit is distinct, or that that outfit is distinct when combined with the 45-day span of these robberies, Mr. Bryant notes that Mr. Roberts admitted to robbing a bank in that exact outfit within the same 45-day window. And as to the note, Mr. Bryant points out that in the FBI's 2021 data, 59.2% of the bank robberies committed that year involved the passing of a demand note. *Id.* (citing "Bank Crime Statistics, Federally Insured Financial Institutions, January 1, 2021–December 31, 2021," FBI, 1, 2, 4 (Apr. 21, 2022), https://www.fbi.gov/file-repository/bank-crime-statistics-2021.pdf) (The FBI's statistics also reveal that 84.7% of bank robbers commit their robberies, like the instant robbers, at the counter).

The government contends that the *modus operandi* here is distinct in the same way as those at issue in *United States v. Smith*, 103 F.3d 600 (7th Cir. 1996), *United States v. Price*, 516 F.3d 597 (7th Cir. 2008), and *United States v. Brewer*, 915 F.3d 408 (7th Cir. 2019). Mr. Bryant contends that the methodologies used by the robbers in those cases, as well as in *United States v.*

12

*Moore*, 115 F.3d 1348 (7th Cir. 1996), were much more like a signature than the one at issue here.

*Smith* concerned two bank robberies committed about a month apart, and the court found that the following aspects constituted a distinct *modus operandi*:

> First, both robberies were committed by young white males with slender builds. Second, both robbers employed another person to drive them to the bank. Third, both brandished knives (hardly the typical weapon for a holdup man) and held the knives vertically in the air as they robbed the banks. Fourth, both moved behind the bank counter to get the money themselves rather than demanding money from the teller. Fifth, both robbers targeted small, sparsely-staffed bank branches. Sixth, the robberies were close together in time...and the 40 mile distance between the two banks is small.

103 F.3d at 603.

*Moore* dealt with three bank robberies committed over a span of three months. 115 F.3d at 1352–54. The *Moore* court identified nine commonalities amounting to a distinct *modus operandi*:

> [I]n all three cases: 1) two men identified as black and about six feet tall committed the robberies; 2) the crimes were committed in the morning; 3) the robbers emptied the cash drawers with little or no assistance from bank employees, instead of ordering the tellers to do it for them; 4) the money was stuffed into the robbers' pants pockets as opposed to utilizing some form of bag; 5) the robbers used hoods or masks to conceal their face; 6) the robbers wore dark clothing; 7) the targeted financial institutions were all small with no security guard or drive-up window, and were located near residential areas; 8) the robberies occurred within a few months of each other; and 9) most importantly, the robbers used a unique method of "casing" the institution prior to the robbery, which entailed Moore entering the facility approximately 30 to 60 minutes prior to the

13

robbery and very politely asking for directions or a job application.

*Id.* at 1355.

The court in *Price* considered two robberies and found "the specific techniques used by the actual robbers" to be dispositive in making out a distinct methodology:

> Each robbery was an early weekday morning ambush of an employee opening a bank for business. Likewise, in each, the robber(s) forced the bank employee(s) at gunpoint to enter the bank, turn off the alarm, access the vault, and hit the ground before the robbers made their escapes. The banks were located only 5.4 miles apart. The crimes took place within five months of each other.

516 F.3d at 603–04.

Lastly, the court in *Brewer* considered five bank robberies committed in three states over the course of six weeks. 915 F.3d at 411–12. In each, Brewer cased the bank beforehand, making requests for change in odd denominations (two-dollar bills, gold coins, etc.) or loitering conspicuously. *Id.* Sometime after Brewer left the scene, his accomplice would walk into the bank in monochrome outfits carrying a stick; she would use the stick to attempt to block the front doors; and then she would wordlessly present a demand note at the counter. *Id.* The *Brewer* court found it "idiosyncratic" that the defendant "lingered around" the banks "just before they were robbed by a person clothed head to toe," and that the robber "used a stick and a give-me-the-cash-note" on entering the banks. *Id.* at 415.

14

When I evaluate bank robberies for *modus operandi* purposes, I look for commonalities that make them "clearly distinctive from the thousands of other bank robberies committed each year." *Moore*, 115 F.3d at 1355 (citing *Smith*, 103 F.3d at 603). And looking at these bank robberies, I agree with Mr. Bryant that, unlike the unusual or idiosyncratic methods employed in *Smith*, *Moore*, *Price*, and *Brewer*, the commonalities between the Texas and Illinois crimes do not make out a *modus operandi* which distinguishes them from other robberies committed across the country.

The outfit worn by the robbers at each of the Texas and Illinois crimes here was fairly similar, but as far as a bank-robbing outfit, it was not unique. *See Price*, 516 F.3d at 603 (finding that a hooded sweatshirt and a mask were "relatively standard bank robber 'accessories.'") (citing *United States v. Seals*, 419 F.3d 600, 607 (7th Cir. 2005). And while the 45 days over which these robberies were committed is certainly shorter than the 5 months in *Price*, the distance between Texas and Illinois is great. *Id.*; *see*, *e.g.*, *Smith*, 103 F.3d at 603 (finding that, "[c]ompared to a prior robbery in, say, southwest California," the fact that robberies took place in adjoining parts of Wisconsin tended to link them together). Likewise, the fact that Mr. Roberts pled guilty to one of the Texas robberies is catastrophic to the

15

government's argument that the outfit or the method he employed is so unique that it could be used to identify Mr. Bryant.

### C. Rule 403

In *Gomez*, the Seventh Circuit writes that Rule 403 ultimately governs the admissibility of prior acts evidence. 763 F.3d at 854-57. On one side of the scale goes the probative value of the other acts evidence; in the case of prior acts offered to prove identity through *modus operandi*, the more "strong [the] resemblance" between the charged and uncharged acts and the more "idiosyncratic" the crimes, the more probative the evidence. *Id.* at 854 (citations omitted). On the other side goes danger of unfair prejudice, confusion of issues, wasting of time, and misleading of the jury. F.R.E. 403; *Gomez*, 763 F.3d at 856-57.

It is probative that Mr. Bryant pled guilty to robbing two Texas banks with a similar method to the man who robbed the bank in this case. But it is not very probative because, as the FBI's own statistics show, the *modus operandi* that he used in Texas, the passing of a note and conducting the robbery from the counter, are the *modus operandi* used by a majority of robbers in this country. "Bank Crime Statistics" at 2, 4. It is probative that Mr. Bryant pled guilty to robbing two Texas banks in a similar outfit as the man who robbed the bank in this case. But it is not very probative, because the outfit is not itself distinctive and another man, Mr.

16

Roberts, robbed a Texas bank in the same outfit over the same period of time. The government wishes to bolster its case by attributing a third Texas robbery to Mr. Bryant and arguing that expert testimony regarding the handwriting across one robbery Mr. Bryant pled to, another he did not, and the robbery in this case ties them all together. But as I mentioned above, allowing the parties to get into who committed the unsolved Texas robbery and who wrote the notes in the three cases would open the door to a spate of mini-trials over issues all of which are rooted in a district on the other end of the country.

The minimal probative value of the government's proffered prior acts evidence is substantially outweighed by the danger of unfair prejudice, of the confusion of issues, of the wasting of time, and of misleading the jury. As such, I deny the government's motions to admit evidence of the Texas robberies. By the same token, without passing on the reliability of handwriting science, I grant Mr. Bryant's motion to exclude the testimony of the government's expert, given that it is relevant only to the government's theory under Rule 404(b); I likewise grant Mr. Brant's motion to exclude any other as-yet undisclosed 404(b) evidence.

17

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: January 9, 2026